793 So.2d 675 (2001)
John Ray KIDD, Appellant
v.
STATE of Mississippi, Appellee.
No. 1999-KA-01435-COA.
Court of Appeals of Mississippi.
April 10, 2001.
Rehearing Denied June 5, 2001.
Certiorari Denied September 6, 2001.
*677 Anthony L. Farese, David Lee Robinson, Ashland, for Appellant.
Office of the Attorney General by Jeffrey A. Klingfuss, for Appellee.
Before KING, P.J., PAYNE, and IRVING, JJ.
KING, P.J., for the Court:
¶ 1. John Ray Kidd was convicted in the Union County Circuit Court of one count of sexual battery and two counts of rape. The court sentenced him to serve twentyfive years for sexual battery and thirty years on each count of the rape conviction. All sentences were to be served consecutively in the custody of the Mississippi Department of Corrections. Aggrieved by this conviction, Kidd has appealed and presents for this Court's consideration the following issues: (1) whether the verdict was against the weight of the evidence, (2) whether defendant's motion for mistrial, based upon a supposed discovery violation by the State, should have been granted, (3) whether the sentences imposed were excessive in violation of the United States and Mississippi Constitutions and (4) whether defendant was prejudiced by the admission of a plaster cast of a footprint.
¶ 2. Finding no reversible error, this Court affirms.

FACTS
¶ 3. On February 8, 1998, A.A. reported that she had been raped by Kidd. A.A. worked as a waitress in a local bar, which closed at approximately 12 a.m. On February 8, 1998, shortly after closing time, Kidd entered the bar. Hearing A.A. discuss her need for a ride home, Kidd offered to take her home.
¶ 4. A.A. did not know Kidd; therefore, asked her employer about him. Her employer, a long time friend of Kidd and his family, assured her that it would be all right if she accepted a ride from Kidd. Based upon this assurance, A.A. left the bar with Kidd about 1:30 a.m. Rather than taking A.A. home, Kidd proceeded to rape and assault A.A. several times, in various places during a period which spanned several hours.
¶ 5. Upon being released by Kidd about 6:45 a.m., A.A. called her mother and detailed the events of the last several hours. Her mother arrived and carried A.A. to North Mississippi Medical Center, where she was examined and treated, evidence was collected, statements were taken from A.A. by medical personnel and the police, and pictures were taken of A.A.'s injuries. A.A. was released from North Mississippi Medical Center about 2:30 that afternoon.
¶ 6. As a part of her treatment for injuries received during the rape and assault, A.A. was seen by Cindy Hopkins, the emergency room nurse, Dr. Kirksey, the *678 emergency room physician, Dr. Brawner, an ophthalmologist, and Dr. Kellum, a gastroenterologist. Each of these persons made notations of their interview with and observations of A.A. for purposes of medical treatment.
¶ 7. Statements were also taken from A.A. by several officers as part of the criminal investigation, including Officers Howell, McCoy and Sewall. The initial incident report taken by Officer Howell, reflected the following events as related by A.A.:
A.A. worked at Dodger's Bar & Grill. On the evening in question at about 1:30 a.m., she explained to her employer, Roger Grimes, that she needed a ride home. Kidd who was at the bar and with whom A.A. had been talking, said he would take her home. Grimes told A.A. that he knew Kidd and that it would be alright for her to leave with Kidd.
After getting into Kidd's white pick-up truck, Kidd put a gun to A.A.'s head and told her that he did not want her looking at him. After noticing a police roadblock in the road, Kidd threatened to kill her if she said anything.
After getting through the road block, Kidd took her to a house where he pulled her by her hair and forced her inside and to an upstairs bedroom. There Kidd threw her on a bed, put a knife to her throat and tied her hands and feet. Kidd then had sexual intercourse with her and afterwards turned her over on her stomach and again penetrated her.
Kidd then took A.A. and left the house and drove to a wooded area where he made her remove her clothes. The tailgate of his truck was pulled down and Kidd began choking A.A. while he had forcible intercourse with her on the tailgate. A.A. passed out but was wakened by Kidd hitting and slapping her face. After getting dressed, A.A. sat on the floor of the truck as Kidd drove to a nearby gas station and filled the truck's tank with gas. Kidd then drove back to the wooded area where he again raped A.A. Kidd explained that he would take her home and asked what she would tell her mother. He threatened to kill her if she told anyone of the evening's events. Kidd dropped A.A. off at a gas station and A.A. called her mother at 6:45 a.m. A.A. was taken by her mother to the North Mississippi Medical Center.
The other statements contained more or less this same information.

RESOLUTION OF THE ISSUES

1. Was the verdict against the weight of the evidence?

¶ 8. Kidd asks this Court to reverse his conviction because of his belief that the verdict is not supported by the evidence. He bases this position upon what he perceives to be inconsistencies and incongruities in the testimony and evidence at trial. Because of these presumed inconsistencies and incongruities, Kidd argues that a reasonable jury could not have found him guilty beyond a reasonable doubt.
¶ 9. When considering a challenge to the weight of the evidence, "this Court must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial." Dudley v. State, 719 So.2d 180, 182 (Miss.1998). In reviewing the evidence, the State must be accorded the benefit of any and all reasonable inferences, which may be drawn from the evidence. Griffin v. State, 607 So.2d 1197, 1201 (Miss.1992) "Only in those cases where the verdict is so contrary to the overwhelming weight of the evidence that *679 to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal." Dudley, 719 So.2d at 182.
¶ 10. A.A. testified to having been raped. That testimony was corroborated by the testimony of the medical personnel as they related A.A.'s history and their objective observations of her. A.A.'s testimony was also corroborated by the testimony of the officers as they related her statements and their subjective and objective observations of her.
¶ 11. As such, there was substantial evidence in the record, upon which a reasonable jury could have found Kidd guilty. Where the evidence before the jury is such that reasonable jurors could have found the defendant guilty, the verdict is beyond our authority to disturb. Taylor v. State, 672 So.2d 1246, 1255 (Miss.1996).
¶ 12. Because we find that a reasonable jury could have found Kidd guilty, we will not disturb the jury's verdict.

2. Whether defendant's motion for mistrial, based upon a supposed discovery violation by the State should have been granted?
¶ 13. In the presentation of his defense, Kidd called Deputy Chad Glasson. Deputy Glasson was called to testify that he had participated in a roadblock on February 8, 1998, where a vehicle carrying A.A. and Kidd was stopped, and that A.A. informed the deputy that she was Kidd's girlfriend, and asked the deputy if she could drive Kidd home since he was impaired.
¶ 14. The information that A.A. had asked deputy Glasson for permission to drive Kidd home, was contained in a written statement given by Glasson. As part of the discovery process, the State had provided Kidd a copy of Glasson's statement. When questioned by Kidd, Glasson acknowledged having given a written statement, which indicated A.A. had informed him she was Kidd's girlfriend, and asked permission to drive Kidd home because he was impaired. However, under cross-examination by the State, Glasson stated that that portion of his written statement, which indicated A.A. identified herself as Kidd's girlfriend, and requested permission to drive him home, was a typographical error. Glasson then testified that A.A. had not identified herself as Kidd's girlfriend, or asked permission to drive him home.
¶ 15. The record establishes that the State was aware of this change in Glasson's testimony the day prior to trial. Kidd argues that because the State was aware of this change in Glasson's testimony, it was obligated to inform him of the change. Kidd argues that the failure to provide this information was an appropriate basis for a mistrial. Kidd's motion for mistrial predicated upon the failure to provide him this additional information was denied. The trial court noted that this was a witness called by Kidd, who presumably would have informed Kidd of the error had he been questioned about the statement prior to trial. Because Glasson's initial statement was provided to Kidd as a part of the discovery process, the State was also obligated to provide to Kidd any changes or corrections to that statement. However, we also note that this witness was not called by the prosecution, nor is the testimony exculpatory as envisioned by Rule 9.04 A.6 of the Uniform Rules of Circuit and County Court Practices. Under these circumstances the question is clearly one of whether the defendant was prejudiced by this testimony.
¶ 16. The trial judge is in the best position to determine the prejudicial effect of testimony; he is allowed considerable discretion in determining whether testimony *680 is so prejudicial as to warrant a mistrial. Unless that discretion has been abused, this Court will not reverse the trial court's decision not to grant a mistrial. Gribble v. State, 760 So.2d 790, 793 (Miss.Ct.App.2000). We do not, under these facts, find an abuse of the trial court's discretion.

3. Whether the sentence imposed was excessive and in violation of the United States and Mississippi Constitutions?
¶ 17. Kidd was sentenced as follows: count Isexual battery, twenty-five years, count Vrape, thirty years, and count VIrape, thirty years. The trial court ordered the sentences, to be served consecutively in the custody of the Mississippi Department of Corrections. Kidd argues that these sentences constituted cruel or unusual punishment and were excessive for the crimes committed. The State maintains that the sentences Kidd received were within the statutory parameters and therefore do not constitute cruel and unusual punishment.
¶ 18. Pursuant to Miss.Code Ann. Section 47-5-138(5)(Rev.2000), Kidd must serve eighty-five percent of his sentence before being eligible for parole. At the time of trial, Kidd was twenty-six years old. He will therefore be ninety-eight years old at the time he is eligible for parole. Kidd contends that in essence his is a life sentence without the benefit of parole which is clearly grossly disproportionate to the offenses for which he was convicted.
¶ 19. In Solem v. Helm, 463 U.S. 277, 292, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), the U.S. Supreme Court articulated a three-prong test for the evaluation of proportionality. The elements of that test:
(1) The gravity of the offense and the harshness of the penalty;
(2) Comparison of the sentence with sentences imposed on other criminals in the same jurisdiction; and
(3) Comparison of sentences imposed in other jurisdictions for commission of the same crime with the sentence imposed in this case.
¶ 20. However, in Harmelin v. Michigan, 501 U.S. 957, 1019, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991), the United States Supreme Court overruled the general proposition announced in Solem, that all sentences are subject to proportionality analysis, and provided that an inference of gross disproportionality must appear from a threshold comparison of the crime and sentence in order for Solem to apply. In Hoops v. State, 681 So.2d 521 (Miss.1996), our supreme court acknowledged the Harmelin limitation on Solem.
¶ 21. As to Kidd's sentence, we find that a threshold comparison of the crimes of which Kidd was found guilty to the eighty-five-year sentence imposed by the trial court does not give rise to an inference of gross disproportionality.
¶ 22. Generally, a sentence will not be disturbed on appeal if it does not exceed the maximum term allowed by statute. Wallace v. State, 607 So.2d 1184, 1188 (Miss.1992); Fleming v. State, 604 So.2d 280, 302 (Miss.1992); Reed v. State, 536 So.2d 1336, 1339 (Miss.1988); Corley v. State, 536 So.2d 1314, 1319 (Miss.1988). If the sentence imposed is within the statutory limits, sentencing is ordinarily a matter of trial court discretion and will not be interfered with on appeal. Wallace, 607 So.2d at 1188. Kidd's sentence was within the statutory limits, and this Court declines to disturb it.

4. Whether defendant was prejudiced by the admission of a plaster cast of a footprint?
¶ 23. A plaster cast was taken of a foot print located at the crime scene. The *681 plaster cast was admitted into evidence over Kidd's objections. While the cast was admitted into evidence, the State's expert witness testified that he was unable to identify this cast as matching Kidd's shoes. He did however testify that it had the same general characteristics as Kidd's shoes.
¶ 24. Kidd asserts on appeal that James Wildman, who prepared the plaster cast, had no special training in making such a mold, that he had not been listed by the State as a witness in discovery and that the chain-of-custody of the mold was not properly established. Kidd's objection to the testimony of Wildman because his name was not provided in pre-trial discovery as a State's witness was overruled.
¶ 25. Wildman testified that the plaster cast appeared to be one he made of a foot print in the eastern part of Pontotoc County. After pouring the cast, he transferred it to Investigator Mickey Baker. Wildman admitted to not having placed any identifying marks on the plaster cast. Wildman testified: "I can't swear that that is the same one." Even further, Wildman indicated that the crime scene from which he made the plaster cast was not a secure scene and admitted that a number of others had been to the crime scene before the plaster cast was made.
¶ 26. The State responds that the trial court heard the testimony of the officers about how the cast was prepared and transported and that there was ample evidence to authenticate the cast. Additionally, the State points out that defense counsel made no argument that the cast had been tampered with or was not what it purported to be.
¶ 27. Our standard of review regarding whether the trial court committed error in the admission of particular evidence is well settled. The trial judge has considerable discretion in determining the admissibility of evidence. Johnston v. State, 567 So.2d 237, 238 (Miss.1990); Davis v. State, 684 So.2d 643, 661 (Miss. 1996). We will not reverse the trial court's decision merely because of an erroneous evidentiary ruling. Newsom v. State, 629 So.2d 611, 614 (Miss.1993). Rather, the appellant must demonstrate that he was effectively denied a substantial right by the evidentiary ruling before a reversal is required. Id. There must be a showing that the trial judge abused his discretion and that "the admission or exclusion of evidence ... results in prejudice and harm or adversely affects a substantial right of a party." K-Mart Corp. v. Hardy, 735 So.2d 975 (¶ 21) (Miss.1999) (citing Hansen v. State, 592 So.2d 114, 132 (Miss.1991)). Although Kidd argues that the admission of the cast was prejudicial to his case, he provides no support for this contention. "[Defendant's] bald assertion that the probative value of the evidence was outweighed by its prejudicial effect does not show an abuse of discretion on the part of the trial court." U.S. v. Parziale, 947 F.2d 123, 129 (5th Cir.1991).
¶ 28. This Court finds no merit in this argument.
¶ 29. THE JUDGMENT OF THE CIRCUIT COURT OF UNION COUNTY OF CONVICTION OF COUNT I SEXUAL BATTERY AND SENTENCE OF TWENTY-FIVE YEARS, CONVICTION OF COUNT V RAPE AND SENTENCE OF THIRTY YEARS, CONVICTION OF COUNT VI RAPE AND SENTENCE OF THIRTY YEARS, TO RUN CONSECUTIVELY IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO UNION COUNTY.
*682 McMILLIN, C.J., PAYNE, BRIDGES, THOMAS, LEE, IRVING, and MYERS JJ ., concur.
SOUTHWICK, P.J., concurs in result only.
CHANDLER, J., dissents with separate written opinion.
CHANDLER, J., dissenting:
¶ 30. Because of two substantive procedural errors that occurred at trial, I am not convinced that Kidd received a fair trial. Thus, I respectfully dissent.
¶ 31. First, I am concerned by the State's failure to inform Kidd's attorney that Deputy Chad Glasson had retracted that portion of his statement in which he stated that A.A. told him she was Kidd's girlfriend. I am unmoved by Deputy Glasson's characterization of an entire sentence of his report as a "typographical error." While Kidd's attorney did an admirable job of casting Glasson's changed statement in a negative light before the jury, the prejudice caused by a law enforcement officer's last minute retraction of the exculpatory portion of his statement should not have been overlooked in such a serious criminal case. I do not suggest that every case where a law enforcement officer changes his statement will warrant a mistrial. In the case sub judice, however, I believe it was warranted given the graphic nature of the charges against Kidd and the abundance of contradictory testimony, much of which emanated from Kidd's accuser.
¶ 32. Second, I am concerned with the trial court's finding that the plaster cast taken from a footprint at the scene of the investigation was properly authenticated. Mississippi Rule of Evidence 901(a) provides: "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Our supreme court has held that the test for continuous possession of evidence is: "whether or not there is any indication or reasonable inference of probable tampering with the evidence or substitution of the evidence." Thomas v. State, 711 So.2d 867, 871 (Miss.1998). I acknowledge that actions of police officers with respect to evidence preservation are accompanied by a strong presumption of validity. Haley v. State, 737 So.2d 371 (Miss.Ct.App.1999) (citing Nixon v. State, 336 So.2d 742, 744 (Miss.1976)). However, I believe that Kidd's trial attorney successfully rebutted this presumption.
¶ 33. Detective Bing Wildman poured the cast at an admittedly unsecured scene. After pouring plaster of Paris into the print, he left the scene for one or two hours. Detective Wildman had no special training in pouring such casts. When he collected the dried cast, Wildman did not make any mark on the cast which would help him unequivocally identify the cast as the one he poured in his investigation of this particular case. Wildman admitted that he could not testify under oath that the cast was the one he turned over to Mickey Baker. Wildman further did not know whether anyone came to the scene after he poured the cast but before he returned to collect the dried cast.
¶ 34. Mickey Baker, an investigator for the Mississippi Highway Patrol, testified that he received a plaster cast of a foot print purportedly taken at the scene of investigation in the case sub judice. Baker testified that he "thinks" the cast was poured by Sammy Pickens and that he "thinks" Pickens was present when Baker took possession of the print and that Wildman and a couple of other deputies were present. Baker "thinks" he took possession of the cast on February 9, 1998. He packaged the print in a box and he sealed the box. Baker "thinks" "they" had a storage area, a closet, that "they" keep *683 locked at the Union County Sheriff's Office. Baker testified that he "thinks" that he left the box in the closet until he got ready to submit it to the Mississippi Crime Lab. Baker did not place any identifying marks on the cast itself, but he did mark the box with his initials and the date. The date on the box indicated that Baker actually sealed the box on February 17, 1998, not on February 9, the date he took possession of the cast. There is no explanation in the record for this anomaly.
¶ 35. Given the unsecure nature of the purported crime scene, Wildman's testimony that he could not say under oath that the cast was the one he made for this case, and Blackmon's equivocal testimony that he "thought" he locked the cast in a closet at the sheriffs office, I do not believe that there was sufficient evidence to establish that the cast is what its proponent claims. Since authentication of evidence is a condition precedent to admission, I believe the trial judge abused his discretion in admitting the cast. I also believe that Kidd has demonstrated prejudice. The jury heard testimony from a forensic scientist, Joe Andrews, that the cast shared general characteristics with a boot that was removed from Kidd's place of abode. Andrews testified that he could not positively identify Kidd's boot as being the one that made the print because there were no distinct individual characteristics observed in the impression; however, Andrews also testified that the impression matched the bottom of the boot for size, shape and pattern on the bottom of the shoe. The jury could have inferred that the impression was made by Kidd's boot. Given the problems with authentication, I do not believe this evidence should have been presented to the jury. I would reverse and remand this case for a new trial.