# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-KA-00550-COA

**KODIE MARSHALL PARKER A/K/A KODIE PARKER**                    APPELLANT

**v.**

**STATE OF MISSISSIPPI**                    APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 02/28/2023 |
| TRIAL JUDGE: | HON. KENT E. SMITH |
| COURT FROM WHICH APPEALED: | CALHOUN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | EDWARD DUDLEY LANCASTER |
| | JOHN S. GRANT IV |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: BARBARA WAKELAND BYRD |
| DISTRICT ATTORNEY: | BENJAMIN F. CREEKMORE |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 12/17/2024 |
| MOTION FOR REHEARING FILED: | |

**BEFORE CARLTON, P.J., SMITH AND EMFINGER, JJ.**

**SMITH, J., FOR THE COURT:**

¶1.     A Calhoun County Circuit Court jury convicted Kodie Parker of two counts of fourth-offense simple domestic violence under Mississippi Code Annotated section 97-3-7(5) (Rev. 2020). Simple domestic violence becomes a felony when the perpetrator has been previously convicted twice within seven years. *Id*. § 97-3-7(3)(b). For a fourth offense, the penalty is increased even further. *Id*. § 97-3-7(5). Following the jury's verdict, the circuit court sentenced Parker to serve twenty years for each count concurrently in the custody of the Mississippi Department of Corrections as a habitual offender pursuant to Mississippi

Code Annotated section 99-19-81 (Rev. 2020). Additionally, the circuit court entered a protection order for the victim and her family.

¶2. On appeal, Parker argues (1) the circuit court erred by admitting evidence of other crimes or wrongs under Mississippi Rules of Evidence 404(b) and 403, (2) the circuit court erred by admitting testimonial hearsay from the victims of prior offenses and from a purported victim of an uncharged offense and violated his constitutional rights under the Fifth and Sixth Amendments, and (3) the cumulative effect of the errors warrants reversal. Finding no reversible error, we affirm Parker's convictions and sentences.

**FACTS**

¶3. Parker and Courtney James began dating in August 2021 and, according to her testimony, maintained a good relationship until November 2021. James testified that Parker became violent with her on two separate occasions. The first incident she described for the jury occurred on November 5, 2021, when Parker accused her of talking to another man. When she denied it, Parker told her "to lie again, bitch, and if you lie again, I'm fixing to knock your teeth down your throat." In an assault that she described as lasting thirty minutes, Parker struck her in the face and broke her hand after she put it up in self-defense. James told the jury that she did not get medical care and did not report the first assault because she loved him, hoped that it would not happen again, and did not want to get him in trouble. However, she did take photos the next day, documenting the injury to her eye and choke marks on her neck. These photos were entered into evidence.

¶4. She also testified about a second incident that occurred on December 7, 2021, after

2

Parker got angry because he believed she was ignoring his text messages while she was at work. When she got home, he pushed her to the ground, stepped on her arm, and choked her until she could not breathe. After the assault, when Parker left to go hunting, James went to her mother's house. The next day, she left Parker, pressed charges, and sought a restraining order against him. When asked why she finally decided to leave, James testified, "Because I've had enough. I can't take much more. I'm a small person. He's bigger than me, you know. It's emotionally scarring."

¶5. A Calhoun County grand jury indicted Parker for two counts of fourth-offense simple domestic violence. Prior to trial, the State moved in limine to allow factual evidence of Parker's three prior convictions of simple domestic violence under Mississippi Rules of Evidence 404(b) and 403. The State argued that the factual details of the prior crimes of domestic violence were substantially similar to the details of the current crime of domestic violence and admissible to show Parker's motive, intent, and modus operandi. In addition, the State argued that the probative value of the evidence would not be substantially outweighed by the danger of unfair prejudice. At the pretrial hearing, Parker objected, primarily claiming that evidence regarding facts from the prior convictions was remote and irrelevant. As part of his objection, defense counsel inquired, "Also, Judge, how can you admit this when there has never been a predicate laid through testimony." In response, the trial court specifically required the State to confirm that its intention was to call the prior victims to the witness stand during the trial. After this was confirmed by the State, the court reviewed relevant Mississippi caselaw and granted the State's motion, finding that the prior

incidents were admissible to show motive, intent, or modus operandi for acts of violence. At the defense's request, the court accepted a continuing objection for the record.

¶6.     At trial, after James testified, the State presented the testimony of Katie Soldevila, the treating medical provider for her injuries after the second assault. Soldevila testified that James complained of radiating pain in her left hand and swelling, which first began after she tried to cover her face during the assault and Parker struck her hand. An x-ray confirmed a mildly displaced fracture, and Soldevila placed James in an ulnar gutter cast to immobilize the injured area. The State also called as a witness Chief Deputy Dean Poyner of the Calhoun County Sheriff's Department. As part of his investigation, Poyner learned of Parker's three prior convictions of domestic violence against three other victims while investigating James's claims. Through Poyner, the State introduced certified records from the Calhoun County Justice Court and Circuit Court as exhibits to his testimony and published them to the jury. Among the admitted documents were short affidavits from two of the victims along with a corresponding "Abstract from Justice Court" and a "Waiver, Bill of Information," and "Judgment/Sentencing Order" from the circuit court. The defense objected to Poyner's testimony on Parker's other domestic violence charges, arguing that they were irrelevant, that "the prejudice is heavy," and "the probative value is nonexistent."[1] After this pronouncement, the circuit court overruled the objection, stating, "It is up to the State of Mississippi to be able to prove that [Parker] has the requisite number of prior convictions." The State then informed the court that at the pretrial Rule 404(b) hearing on

_____

[1] The defense renewed their objection for the record several times throughout Deputy Poyner's testimony.

4

their motion in limine, the court had ruled that the affidavits were also admissible. Another circuit judge in the district presided over this prior hearing. Upon hearing this information, the trial judge responded by stating, "If he ruled on it, I'm not going to change the ruling." During the direct examination that followed, the court sustained a separate objection Parker made to further testimony by Poyner describing the contents of the affidavits, ruling that "[t]he documents speak for themselves."

¶7.    After the State rested its case-in-chief, Parker moved for a directed verdict, alleging that the State failed to prove the elements on the offense charged. The circuit court overruled the motion and found that the State had made a prima facie case, having offered evidence on each element to the jury. Parker then renewed his motion for a mistrial on the improperly admitted prejudicial evidence from his prior convictions. The trial court denied the motion for a mistrial and found that the prior convictions were elements and foundational evidence the State had to admit into evidence. Parker testified in his own defense and submitted that James's injuries occurred in a four-wheeler accident. In addition to his own testimony denying the assaults, Parker offered the testimony of his grandfather, Billy Parker, as a character witness and his friend Michael Joe Lee.

¶8.    As a rebuttal witness, the State presented the testimony of Carley Wade, Parker's girlfriend at the time. After being declared a hostile witness, Wade testified about the nature of her relationship with Parker, her knowledge of James's injuries that were the subject of the trial, and conversations she had with Parker and James regarding the case. Parker had previously testified that he never hit Wade, and when asked about it, she denied he hit her.

5

When confronted with a prior inconsistent answer she gave to her probation officer, she denied saying he hit her. The State then presented the testimony of Agent Sheraline Mims, Wade's probation officer. Agent Mims testified about the interaction she had with Wade at her recent visit, when Wade had two black eyes and ultimately stated Parker caused them.

¶9. At the close of evidence, Parker unsuccessfully renewed his motion for a directed verdict and his motion for a mistrial. After considering all the testimony and evidence, the jury found Parker guilty of both counts of fourth-offense simple domestic violence. The circuit court sentenced Parker as a habitual offender to serve twenty years for each count, set to run concurrently with each other. Subsequently, Parker filed a motion for judgment notwithstanding the verdict (JNOV) or a new trial, which the circuit court denied.

## DISCUSSION

### I. Admission of Prior Convictions and Other Bad Acts

¶10. Parker first asserts that the circuit court erred by admitting evidence of the factual grounds that comprised his prior convictions of domestic violence. Specifically, Parker contends that the admission of two of the affidavits from those convictions violated the rules against hearsay and his Constitutional protections.[2] This Court reviews the admission or exclusion of evidence for an abuse of discretion. *Colburn v. State*, 368 So. 3d 347, 349 (¶17) (Miss. Ct. App. 2023) (citing *Robinson v. State*, 42 So. 3d 598, 603 (¶14) (Miss. Ct. App.

---

[2] As previously noted, Parker objected to the evidence of his prior acts during the State's motion in limine and was granted a continuing objection to the admission during trial. His counsel also objected multiple times to the evidence during Poyner's testimony. Thus, the issue is not procedurally barred. *See Jones v. State*, 287 So. 3d 995, 1007 n.5 (Miss. Ct. App. 2019).

2010)). "[A]bsent an abuse of that discretion, the trial court's decision will not be disturbed on appeal." *Id.* (citing *Clarke v. State*, 859 So. 2d 1021, 1024 (¶18) (Miss. Ct. App. 2003)). "[T]he admission or exclusion of evidence must result in prejudice or harm" if a conviction is to be reversed on that account. *Id.* "Constitutional issues are reviewed de novo." *Id.* (citing *Jenkins v. State*, 102 So. 3d 1063, 1065 (¶7) (Miss. 2012)).

¶11. As part of this assignment of error, Parker initially argues that the affidavits from his prior convictions should have been excluded because they were improper under Rule 404(b) and unduly prejudicial compared to the probative value under Rule 403. Generally, relevant evidence, including proof of other crimes or acts of a defendant, may be admitted under Rule 404(b) as long as "it is still subjected to the requirement that evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice" under Rule 403. *Williams v. State*, 308 So. 3d 892, 895 (¶13) (Miss. Ct. App. 2020) (citing *Adams v. State*, 794 So. 2d 1049, 1055 (¶14) (Miss. Ct. App. 2001)). Akin to the facts before us, in a previous assault-and-kidnapping case, we held that it was not an abuse of discretion to allow testimony about prior incidents with previous girlfriends where the defendant held the women against their will, assaulted them under similar circumstances, and threatened them. *Parks v. State*, 228 So. 3d 853, 869 (¶63) (Miss. Ct. App. 2017); *see also Sullivan v. State*, 281 So. 3d 1146, 1157 (¶19) (Miss. Ct. App. 2019).

¶12. While evidence of prior bad acts like the previous assaults in this case may be admissible, it still must be offered through appropriate witnesses that pass constitutional muster under the Confrontation Clause. "Both the United States Constitution and the Mississippi Constitution guarantee a defendant in a criminal prosecution the right to

7

confront the witnesses against him." *Stevenson v. State*, 357 So. 3d 1141, 1149 (¶26) (Miss. Ct. App. 2023) (quoting *Buchanan v. State*, 316 So. 3d 619, 624 (¶19) (Miss. 2021)); U.S. Const. amend. VI; Miss. Const. art. 3, §26. This Court has held if a defendant is unable to cross-examine a witness regarding statements made in an *affidavit* when the defendant did not forfeit his constitutional right, then the admission of an affidavit violates the Sixth Amendment right to confrontation. *See Montson v. State*, 318 So. 3d 1133, 1140 (¶37) (Miss. Ct. App. 2020). Parker was not given the opportunity to cross-examine the victims from his prior convictions, and the record does not reflect that the victims were unavailable. Therefore, we find that it was a violation of the Confrontation Clause to allow their affidavits into evidence. However, our review does not end there.

¶13. Upon review, if a Confrontation Clause violation is found, the violation is subject to a harmless-error analysis. *Sanders v. State*, 228 So. 3d 888, 890 (¶8) (Miss. Ct. App. 2017) (citing *Conners v. State*, 92 So. 3d 676, 684 (¶20) (Miss. 2012)). Thus, even if it is determined that a violation has occurred, "an otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the Constitutional error was harmless beyond a reasonable doubt." *Stevenson*, 357 So. 3d at 1149. "Where the improperly admitted evidence is largely cumulative of other evidence before the jury, and the evidence presented against the defendant, taken as a whole, is overwhelming, the error may be harmless." *Id*.

¶14. An examination of the affidavits admitted in the case before us reveals that the substantive contents of both were one to two sentences long and did not contain a lengthy recitation of factual details from the dates in question. Further, we are mindful that for

8

crimes with enhanced penalties for subsequent offenses (e.g. DUI or domestic violence), a required element of proof the State must show is the offender has, in fact, been convicted of underlying predicate crimes, which necessarily consist of the offender's prior bad acts. *See Snyder v. State*, 174 So. 3d 331, 336 (¶23) (Miss. Ct. App. 2015). Thus, the filter of the admission of prior acts of the defendant in those cases is somewhat unique. When a defendant does not choose to stipulate to these prior convictions, the evidence to meet this required element of the charge typically consists of the judgment or abstract of his prior conviction. But affidavits of victims of those prior crimes are not necessary to support this element, and it was an abuse of discretion to admit them.

¶15. While it was erroneous to admit the affidavits, we find the error was harmless beyond a reasonable doubt. *See Smith v. State*, 986 So. 2d 290, 300 (¶31) (Miss. 2008) (finding harmless error despite a Confrontation Clause violation); *Stevenson v. State*, 357 So. 3d 1141, 1149 (¶26) (Miss. Ct. App. 2023) (same). Admitting the affidavits did not prejudice the outcome of Parker's trial because of the minimal description included in the affidavits, because of the overwhelming evidence in the record, and because of the cumulative nature of the affidavits. It was already necessary for the jury to be made aware of the defendant's prior crimes because, in a trial for an enhanceable offense, the State had to prove his previous crimes as a required element. "Therefore, because there was additional evidence outside the tainted evidence that stemmed from the Confrontation Clause violation, . . . 'the circuit court's error . . . was a harmless one, and as such, no manifest miscarriage of justice occurred. . . .'" *Stevenson*, 357 So. 3d at 1156 (¶47) (quoting *Sanders*, 228 So. 3d at 893 (¶19)).

## II. Admission of Wade's Prior Statement

¶16. Parker next asserts that the circuit court erred by admitting Wade's testimonial hearsay. The focus of this assignment of error is a statement Wade made related to an alleged assault Parker committed on her. He contends that Wade's statement, offered through her probation officer Agent Mims, was testimonial hearsay. Wade was initially called in rebuttal by the State and, without objection, was permitted to be treated as an adverse or hostile witness. Earlier in the trial, Parker testified that he had never hit Wade. When called as a rebuttal witness, Wade testified regarding her knowledge of James's injuries and conversations she had via text and personally with James and Parker regarding the case. Wade then denied being hit by Parker and making a prior statement to her probation officer that Parker had given her a black eye. The State then called Agent Mims to impeach Wade of her prior statement, and the statement was not offered for the truth of the matter asserted. *See Hall v. State*, 691 So. 2d 415, 420 (Miss. 1997) (holding a prior inconsistent statement is not hearsay when offered for impeachment and not for the truth of the matter asserted). Further, because Wade and Mims "both testified at trial and were subject to cross-examination, the Confrontation Clause posed no barrier" to testimony regarding Wade's out-of-court statements. *Edwards v. State*, 379 So. 3d 906, 912 (¶25) (Miss. Ct. App. 2024); *see also Perrigin v. State*, 353 So. 3d 1108, 1113 (¶34) (Miss. Ct. App. 2023). Therefore, we find no error in the admission of Wade's prior statement.

## III. Cumulative Error

¶17. In his final assignment of error, Parker argues that the cumulative effect of the above-alleged errors warrants reversal. "Under the cumulative-error doctrine, individual errors may

10

combine with other errors to make up reversible error, where the cumulative effect of all errors deprives the defendant of a fundamentally fair trial." *Abram v. State*, 309 So. 3d 579, 586-87 (¶22) (Miss. Ct. App. 2020). "However, where there is no error in part, there can be no reversible error to the whole." *Id*. (quoting *Harris v. State*, 970 So. 2d 151, 157 (¶24) (Miss. 2007)). In Parker's issues on appeal, we found one instance of error and deemed it harmless. Therefore, we find there is no cumulative error to warrant reversal.

## CONCLUSION

¶18.    Because we find no reversible error, we affirm Parker's convictions and sentences.

¶19.    **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., LAWRENCE, McCARTY, EMFINGER AND WEDDLE, JJ., CONCUR.  WESTBROOKS AND McDONALD, JJ., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**