# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2007-KA-00614-SCT

*WAYNE GILPATRICK*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/17/2006 |
| TRIAL JUDGE: | HON. WILLIAM E. CHAPMAN, III |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | LANCE O'NEAL MIXON |
| | VICTOR W. CARMODY, JR. |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: LADONNA C. HOLLAND |
| DISTRICT ATTORNEY | MICHAEL GUEST |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 08/07/2008 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

## BEFORE WALLER, P.J., DICKINSON AND RANDOLPH, JJ.

### DICKINSON, JUSTICE, FOR THE COURT:

¶1.     The defendant was convicted of three counts of driving under the influence of alcohol (DUI) and negligently causing mutilation.  Finding no reversible error in the trial court's disposition of this matter, we affirm.

## FACTS AND PROCEEDINGS

¶2.     On March 19, 2005 at approximately 1:00 a.m., the truck driven by Wayne Gilpatrick veered into oncoming traffic on Highway 18 and collided with the vehicle driven by John Callicott.  The collision severely injured Callicott and two other passengers, Vince Pontillo, and Craig Beebe, who suffered several broken bones, lacerations, and internal injuries.

¶3. Before the wreck, Gilpatrick had been at "The Warehouse," a pool hall and bar where he frequently set up a karaoke machine for patrons. After the Warehouse closed, Gilpatrick disassembled the karaoke machine and, according to his testimony, drank two beers. Gilpatrick was drinking his third beer while driving home.

¶4. Gilpatrick testified that while at the Warehouse, he was approached by a woman named Denise who requested a ride home, and that he allowed Denise to place some of her belongings, including a vodka bottle from which she had been drinking, on the floorboard of his truck.

¶5. After he finished disassembling the karaoke machine at the Warehouse, Gilpatrick was unable to locate Denise, so he left without her. While driving home, he took his attention off the road while trying to answer his cell phone. He swerved into the opposite lane and crashed into the vehicle driven by Callicott.

¶6. At the time of the wreck, Joey Thrash was driving home on Highway 18. Thrash, who was traveling southbound, testified that from his rearview mirror he saw Gilpatrick's white Chevrolet truck swerve and cross into the northbound lane. Thrash said the white Chevrolet veered back into its proper lane then swerved again into the northbound lane, colliding with Callicott's vehicle. Thrash immediately pulled over to check on the drivers. Thrash testified that "[he] could smell alcohol very distinctly" when he investigated Gilpatrick's vehicle.

¶7. The first officer to arrive at the scene of the accident was Brandon Police Officer Andrea Wade, who testified she saw a cooler full of beer which had burst and spilled in Gilpatrick's truck. She also saw a partially consumed bottle of vodka on the floorboard.

Additionally, Officer Wade testified that "the smell of an alcoholic beverage [was] coming from the interior of the truck. . . . ."

¶8.     Officer Wade interviewed Thrash and concluded that Gilpatrick may have been driving under the influence of alcohol. After the scene was secured and the injured parties were transported to the hospital, Officer Wade went to Baptist hospital where she attempted to administer a blood test to Gilpatrick. After Gilpatrick refused the blood test, Officer Wade obtained a search warrant, returned, and obtained a blood sample from Gilpatrick. Four hours after the collision with Calicott, Gilpatrick's blood alcohol content (BAC) was .07%.

¶9.     Gilpatrick was indicted and tried for three counts of DUI maiming under Mississippi Code Annotated Section 63-11-30(5) (Rev. 2004). At trial, John Stevenson of the Mississippi Crime Laboratory testified as an expert witness on behalf of the State. Stevenson holds a bachelor's degree in biology, is certified by the Mississippi Crime Lab to conduct blood-alcohol analysis, and is "employed as a forensic scientist, specializing in blood alcohol analysis and drug analysis."

¶10.    Stevenson offered several opinions regarding the sample of blood drawn from Gilpatrick. First, Stevenson testified that Gilpatrick's blood had tested at 0.07% for ethyl alcohol. Then, offering testimony pertaining to the effects of ethyl alcohol on people, he stated, "The effects of ethyl alcohol are loss of good mental judgment, loss of skills, motor coordination, perception, more so, motor skills and tasking, multitasking." Stevenson then testified that the effects of alcohol consumption begin "somewhere around .03 and upwards. . . . if you're looking over a general population and a range, sir, between .03 and upwards,

3

you start to have some of the effects of ethanol, sir." Stevenson was asked about his familiarity with retrograde extrapolation (a method of making a determination of the blood alcohol content at a particular point in time by analysis of information and factors known to exist at a later point in time), and whether there was enough information available for him to perform a retrograde extrapolation analysis in this case. Stevenson testified that "there are some factors in it, sir, that are there to perform a retrograde extrapolation. But, we are making, as I stated, some assumptions and some probabilities here, sir." Stevenson said that he did not know the last time that Gilpatrick consumed food or alcohol and, when asked if there was enough information available to form an opinion as to what Gilpatrick's BAC would have been at 1:04 in the morning if his blood was drawn at five in the morning, Stevenson replied: "[h]e could have been higher, he could have been lower, he could have been the same, sir."

¶11. Stevenson was then asked whether he had an opinion as to whether Gilpatrick was driving under the influence at the time of the accident. Stevenson testified: "It is my opinion that he was under the influence of alcohol. My opinion is that an individual is under the influence the minute they start to drink." Stevenson further testified that the influence grows with the blood alcohol content. This testimony drew no objection.

¶12. Gilpatrick was found guilty of three counts of DUI maiming in violation of Mississippi Code Section 63-11-30(5), and sentenced to twenty-five years' imprisonment on each count, with each sentence to run concurrently. Gilpatrick timely perfected his appeal, asking this Court to consider the following assignments of error: (1) the circuit court erred

4

when allowing erroneously allowed the State's expert witness to testify regarding retrograde extrapolation; (2) the evidence presented was insufficient to prove that Gilpatrick was legally intoxicated at the time the accident occurred; and (3) the verdict was contrary to the overwhelming weight of the evidence.

**ANALYSIS**

¶13.     A trial court's decision to admit expert testimony is reviewed for an abuse of discretion. *Taylor v. State*, 954 So.2d 944, 948-49 (Miss. 2007).   Trial courts have a gate-keeping responsibility regarding expert testimony and, "the admission of expert testimony is within the sound discretion of the trial judge." *Puckett v. State*, 737 So.2d 322, 342 (Miss. 1999).   However, if the trial court incorrectly applies the rules of evidence, resulting in prejudice to the defendant, then a reversal is warranted. *Parker v. State,* 606 So.2d 1132, 1137- 38 (Miss. 1992).

¶14.     John Stevenson was tendered and accepted by the court as an expert in toxicology specializing in "alcohol and toxicology."   Gilpatrick asserts that the trial court abused its discretion by allowing Stevenson, to testify concerning retrograde extrapolation because his opinions were not based on scientifically reliable methods but rather, on mere assumptions and speculation.   In support of this argument, Gilpatrick cites argues that the "the party offering the testimony must show that the expert has based his knowledge on the 'methods and procedures of science,' not merely his subjective beliefs or unsupported speculation." *Miss. Transp. Comm'n v. McLemore*, 863 So.2d 31, 36 (Miss. 2003)(citing *Daubert v.*

*Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590, 113 S.Ct. 2795, 2786, 125 L.Ed. 2d 469, 481 (1993)).

¶15.    Our review of the record indicates that Stevenson did not offer an opinion as to Gilpatrick's blood alcohol content at the time of the accident.  Therefore, the assignment of error related to retrograde extrapolation is without merit.

¶16.    The issue in this case is whether Gilpatrick was, "driving or operating a vehicle under circumstances indicating that his ability to so drive or operate the vehicle has been impaired." *Leuer v. City of Flowood*, 744 So. 2d 266, 268 (Miss. 1999).

¶17.    Gilpatrick was indicted under Section 63-11-30(5) of the Mississippi Code.  A necessary element of the applicable provision of that statute, requires that the person be "under the influence of intoxicating liquor" at the time of the accident.  *See* Miss. Code Ann. § 63-11-30(1).  While Stevenson's testimony was introduced in order to meet the burden of proof on that element, there was other evidence sufficient to find Gilpatrick guilty under Section 63-11-30(5).

¶18.    Section 63-11-30(1)(a) is commonly referred to as "common law DUI."  Common law DUI is proven when a defendant's blood alcohol results are unavailable or the defendant's BAC tests under the legal limit, but there is <u>sufficient evidence </u>that the defendant operated a vehicle under circumstances indicating his ability to operated the vehicle was impaired by the consumption of alcohol.  *Leuer,* 744 So. 2d at 268.

¶19.    In support of Gilpatrick's conviction, the State established that Gilpatrick consumed alcohol prior to the wreck and was drinking at the time of the wreck.  In addition, Gilpatrick

6

swerved and crossed the center line immediately prior to the wreck. Several witnesses testified to the presence of alcohol, including beer cans and a partially consumed bottle of vodka in Gilpatrick's vehicle and the inside of his vehicle smelled of alcohol. Finally, four hours after the wreck, Gilpatrick's blood alcohol content was .07%. These factors were sufficient for the jury to find Gilpatrick guilty of DUI beyond a reasonable doubt.

¶20. This Court's standard of review for sufficiency of the evidence has been established as follows:

> Should the facts and inferences considered in a challenge to the sufficiency of the evidence "point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty," the proper remedy is for the appellate court to reverse and render. *Edwards v. State*, 469 So.2d 68, 70 (Miss. 1985) (citing *May v. State*, 460 So.2d 778, 781 (Miss. 1984)); *see also Dycus v. State*, 875 So.2d 140, 164 (Miss. 2004). However, if a review of the evidence reveals that it is of such quality and weight that, "having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair-minded men in the exercise of impartial judgment might reach different conclusions on every element of the offense," the evidence will be deemed to have been sufficient. *Edwards*, 469 So.2d at 70. . . .

*Bush v. State*, 895 So. 2d 836, 843 (Miss. 2005).

¶21. When reviewing a case for sufficiency of the evidence, the relevant question is whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).

¶22. In deciding whether a jury verdict is against the overwhelming weight of the evidence, this Court will disturb the verdict only when it is so contrary to the overwhelming weight of

7

evidence that allowing it to stand would sanction an unconscionable injustice. ***Taggart v.***

***State***, 957 So. 2d 981, 987 (Miss. 2007). Finding the evidence sufficient to prove Gilpatrick

guilty beyond a reasonable doubt, we hold that his arguments regarding the weight and

insufficiency of the evidence necessarily fail.

**CONCLUSION**

¶23.    For the reasons stated above, this Court affirms Gilpatrick's conviction and sentences.

¶24.    **COUNT I: CONVICTION OF DRIVING UNDER THE INFLUENCE OF ALCOHOL AND NEGLIGENTLY CAUSING MUTILATION AND SENTENCE OF TWENTY-FIVE (25) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. COUNT II: CONVICTION OF DRIVING UNDER THE INFLUENCE OF ALCOHOL AND NEGLIGENTLY CAUSING MUTILATION AND SENTENCE OF TWENTY-FIVE (25) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. COUNT III: CONVICTION OF DRIVING UNDER THE INFLUENCE OF ALCOHOL AND NEGLIGENTLY CAUSING MUTILATION AND SENTENCE OF TWENTY-FIVE (25) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. SENTENCES SHALL BE SERVED CONCURRENTLY.**

**SMITH, C.J., WALLER AND DIAZ, P.JJ., EASLEY, CARLSON, GRAVES, RANDOLPH AND LAMAR, JJ., CONCUR.**