ROBERTS, J.,
for the Court:
¶ 1. Kenneth Ray Ellis was convicted of driving under the influence of intoxicating liquor in a bench trial in the Carroll County Circuit Court. He was fined and given a forty-eight-hour suspended sentence. Aggrieved, he raises three issues on appeal: (1) whether the circuit court erred in failing to grant a verdict of acquittal because the State failed to preserve video evidence from the traffic stop, (2) whether the trial court erred in admitting all evidence obtained after the traffic stop since Ellis was acquitted of the careless driving that had been the basis for the traffic stop, and (3) whether the evidence was legally sufficient to support the verdict and the verdict is against the overwhelming weight of the evidence.
¶ 2. Finding no error, we affirm.
FACTS AND PROCEDURAL HISTORY
¶ 3. Mississippi Highway Patrolman Keith Conner was patrolling the northbound lanes of Interstate 55 in Carroll County, Mississippi, at approximately 10:00 p.m. on January 14, 2009. He heard a truck driver in the southbound lane on the driver’s CB radio communicate seeking help from the highway patrol for an SUV being driven in the southbound lane. The SUV was later determined to be driven by Ellis of Ridgeland, Mississippi. Patrolman Conner told the truck driver to stay behind the SUV until he could cross over the median and get behind the SUV.
¶ 4. After this was done, Patrolman Conner said he stayed behind the vehicle for two to three miles observing the driver. Patrolman Conner said that when he saw the SUV go from the fog line[1] back across to the center line weaving in the traffic, he decided to “shut [Ellis] down for the safety of other people on the highway.”
¶ 5. Patrolman Conner put on his blue light to initiate a stop, but Ellis did not immediately stop. Instead, he pulled over and kept moving down the shoulder of the interstate at a slow pace. At this point, Patrolman Conner turned on his spotlight and shined it through the back glass of the SUV in order to stop the vehicle. When Ellis finally came to a stop, his vehicle was parked right on the fog line so that Patrolman Conner could not approach the vehicle without being in the interstate. Patrolman Conner said that he had to direct Ellis to cut his wheels hard to the right and pull further off the interstate so the officer could safely approach the vehicle.
¶ 6. Ellis’s version of the stop was that he saw the officer following him “for some time.” When the patrolman put on his blue lights, Ellis said he slowed down, but he did not stop. He said this was because he was trying to make it to the next exit ramp where he could pull over safely. When Patrolman Conner put on his spot *1122 light, Ellis said that he immediately stopped.
¶ 7. Patrolman Conner said that when he approached the vehicle, he asked Ellis for his driver’s license and proof of insurance. As this was taking place, Patrolman Conner testified that there was a “very strong smell of alcoholic beverage” coming from Ellis, who was the only person in the SUV. Patrolman Conner said that he asked Ellis how much he had to drink, and Ellis responded, “two beers.” Ellis told Patrolman Conner that he was coming from Tu-nica, Mississippi, where he had been duck hunting since early that morning. Patrolman Conner asked Ellis to exit the vehicle and move to the rear of the vehicle, which Ellis had no trouble doing. Patrolman Conner said at the arrest he observed that Ellis’s eyes were glassy; his pupils were dilated; and there was a very strong odor of alcoholic beverage coming from him. Patrolman Conner said he saw an empty Bud Light bottle on the back floorboard and a bottle of Dr. Tischner’s in the vehicle.
¶ 8. During Ellis’s testimony, he admitted that he was drinking and driving. He said that after he was stopped the trooper asked him if he had been drinking, and he responded, “Yes, sir.” Ellis said that Patrolman Conner asked him how many drinks, and Ellis said, “Well, a few.” Patrolman Conner testified that Ellis told him that he had a six pack of Bud Light and that he had consumed two of those beers while driving between Tunica and Vaiden, Mississippi, near where he was stopped. He testified, “I was drinking a beer going down the road. I admit to that.” Earlier in the day at the duck hunt, he testified that he had “sipped” a “little concoction.” Ellis said he also had drunk “a couple of beers” as he and his other hunting partners were “riding the levee” in Tunica.
¶ 9. After Ellis admitted that he had been drinking, Patrolman Conner administered the portable breath machine, and Ellis tested positive for alcohol. Patrolman Conner then placed Ellis under arrest, cuffed him, and took him to the Carroll/Montgomery Jail in Vaiden. At the jail, Ellis refused to take a field sobriety test and refused an Intoxilyzer 8000 test. At the jail, Ellis told Patrolman Conner again that he had “a few beers.” After refusing the Intoxilyzer, Ellis sat on a bench at the jail. Patrolman Conner said he made it a point to look Ellis directly in the eyes while he sat there and that he observed Ellis’s dilated pupils.
¶ 10. Patrolman Conner ticketed Ellis for careless driving and driving under the influence of intoxicating liquor, first offense. Ellis contested the charges in the Carroll County Justice Court, which found him guilty on both offenses.
¶ 11. He appealed to the Circuit Court of Carroll County, which conducted a trial de novo. Only Patrolman Conner and Ellis testified at the circuit court trial. After the State rested its case, the circuit judge granted the motion for a directed verdict as to the careless-driving charge. However, the circuit judge found Ellis guilty of the DUI, first offense. In doing so he pointed out that Ellis himself had admitted he was drinking and driving. The arresting officer reported that when he stopped Ellis there was a smell of alcohol about him; his eyes were glassy and his pupils were dilated; and Ellis admitted that earlier in the day he had been drinking alcohol. Further the circuit judge found that the portable breath test conducted at the stop tested was positive for alcohol. Finally, the circuit judge said Ellis refused to take the Intoxilyzer test.
¶ 12. The circuit judge sentenced Ellis to forty-eight hours in jail, which the judge suspended, and ordered Ellis to pay a fine *1123 of $800 and $832.50 in costs and assessments. He also ordered that Ellis complete the Mississippi Alcohol Safety Education Program.
¶ 13. The circuit court denied Ellis’s motion to reconsider the verdict and his motion for a new trial. This appeal followed.
ANALYSIS
I. DESTRUCTION OF EVIDENCE
¶ 14. Ellis’s first argument on appeal is that he was denied due process of law by the circuit court for failing to direct a verdict of acquittal in Ellis’s favor because the prosecution failed to preserve the trooper’s videotape[2] of the traffic stop. Ellis contends that if he were able to offer the memory card into evidence, it would show Ellis’s condition at the time of the stop and lead to a not-guilty verdict.
¶ 15. On February 2, 2009, Ellis’s attorney sent a letter to Patrolman Conner citing Mississippi Code Annotated section 63-11-15 (Rev.2004)[3] and requesting eight items, one of which was “the video, if any, taken by the officer of the test or tests.” By the time of the circuit court trial, Ellis had converted this request for any video of alcohol testing by the officer to mean the trooper’s memory card of Ellis’s traffic stop. Patrolman Conner did not supply the memory card to Ellis. Patrolman Conner testified that if there was nothing “extraordinary about the stop and nothing goes on,” he does not keep the memory card of each traffic stop. Patrolman Conner said there was no requirement that he keep the card of each stop and that he routinely erased the memory card in order to record future stops. He stated: “When it fills up, you’ve got to get rid of it where you can video your future stops.”
¶ 16. Ellis cites Harness v. State, No. 2007-CT-01415-SCT, 2010 WL 2106027 (Miss. May 27, 2010) for the proposition that destruction of evidence in a DUI case denies a defendant his constitutional due-process rights and must lead to a reversal of the judgment.
¶ 17. First, we must point out that the May 27, 2010 supreme court opinion in Harness was withdrawn by that court and superseded on rehearing by Harness v. State, 58 So.3d 1 (Miss.2011) which completely changed the ruling of the supreme court.[4]
¶ 18. The 2011 Harness opinion sets out Mississippi law concerning whether a defendant’s due-process rights have been violated when physical evidence has been destroyed by the State. Because Harness is not final, as it awaits a decision on the pro se motion for rehearing, we will quote the cases that the Mississippi Supreme Court' used to make its decision. “A defendant has a constitutionally protected privilege to request and obtain from the prosecution evidence that is either material to the guilt of the defendant or relevant to the punishment to be imposed.” California v. Trombetta, 467 U.S. 479, 485, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984) (citing Brady v. Mary *1124 land, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)). In Trombetta, a two-part test was developed for determining whether a defendant’s due-process rights are violated in situations where physical evidence has been destroyed. First, the “evidence must possess an exculpatory value that was apparent before the evidence was destroyed.” Id. at 489, 104 S.Ct. 2528. Secondly, the evidence must “be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.” Id. A bad-faith factor to the Trombetta test was added in Arizona v. Youngblood, 488 U.S. 51, 57-58, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988). There the United States Supreme Court held that “unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law.” Id. at 58, 109 S.Ct. 333.
¶ 19. What has developed then is a three-part test to use when determining if a due-process violation has occurred when physical evidence has been destroyed. In order to prevail on his due-process claim, Ellis first must show that the digital memory card had exculpatory value that was apparent before it was erased. Secondly, he must show that he would be unable to reasonably obtain comparable evidence; and thirdly, Ellis must show that the State acted in bad faith by destroying the memory card.
¶ 20. We will not discuss the first two prongs of the test, although we doubt that the memory card had apparent exculpatory value prior to its erasure. Patrolman Conner testified that the digital camera did not activate until he turned on his blue flashing lights to initiate the actual stop. It would not have shown any actions like the way Ellis was driving prior to the stop. It might have shown the actual stop. However, any exculpatory value of the events following the stop is significantly reduced by Ellis’s own admission that he was drinking and driving and that he had been consuming alcohol earlier in the day at the duck hunt and that he refused the field sobriety test and the Intoxilyzer test. However, we focus instead on the third factor, that the State acted in bad faith by destroying the memory card. We can find no bad faith on the part of the State in the destruction of the card.
¶ 21. Ellis’s attorney sent the trooper a letter requesting “the video, if any, taken by the officer of the test or tests.” However, by this time the memory card had been erased. Patrolman Conner explained that the card was erased through the normal process used by the trooper of erasing and recording over the digital camera’s memory card. Ellis said that unless he determines that there is something unusual about a stop, he simply records over each memory card. He further testified that there was no rule or regulation which required him as a trooper to preserve every memory card of traffic stops. He did not destroy the card of Ellis’s traffic stop to circumvent its disclosure. In failing to preserve the card for Ellis, Patrolman Conner was acting “in good faith and in accord with [his] normal practice.” Trombetta 467 U.S. at 488, 104 S.Ct. 2528 (quoting Killian v. United States, 368 U.S. 231, 242, 82 S.Ct. 302, 7 L.Ed.2d 256 (1961)). Further there is no evidence in the record of any “allegation of official animus towards [the defendant] or of a conscious effort to suppress” the memory card. Id.
¶ 22. We find that Ellis fails to meet the third prong of the Trombetta test, that is, that the memory card was destroyed in bad faith by Patrolman Conner. Instead, the card was simply erased as the trooper sought space for recording his next traffic stop.
*1125 ¶ 23. Thus, we find this issue is without merit.
II. SUPPRESSION OF EVIDENCE OBTAINED DURING THE TRAFFIC STOP
¶ 24. In his second issue, Ellis argues that because the circuit court acquitted him of careless driving, which was the basis for initiating the traffic stop, the circuit court erred in admitting all evidence obtained after the traffic stop.
¶ 25. However, Ellis’s argument is not the current state of the law on this issue. In Harrison v. State, 800 So.2d 1134, 1135 (¶ 3) (Miss.2001), the supreme court dealt with a case where officers testified that they based their stop of Billy Harrison on the belief that Harrison was in violation of the posted speed limit. Harrison was stopped after officers believed he was driving between 67-70 miles per hour in a 60-mile-per-hour construction zone. Id. Once stopped, the officers found 117 pounds of marijuana in a duffle bag inside the trunk of Harrison’s car. Id. at (¶ 5). He was convicted of possession with intent to distribute more than one kilogram of marijuana. It was later developed that there were no workers present in the construction zone, which is a statutory requirement for the violation for which Harrison was stopped. Harrison argued that the marijuana was seized as a result of an unlawful stop not based upon probable cause; thus, any evidence gained during that stop should not be allowed into evidence. Accordingly, Harrison argued that his conviction should be overturned.
¶ 26. The supreme court found that “[i]n essence, the stop was based on a mistake of law.” Id. at 1138 (¶ 19). But the supreme court found that such a mistake of law by an arresting officer did not necessarily mean that the evidence must be suppressed. “The United States Supreme Court has stated that the ‘decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred.’ ” Id. at (¶ 18) (quoting Whren v. United States, 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996)). The supreme court held that further inquiry was needed because the question of probable cause does not turn upon an ultimate finding of guilt of the offense for which one was stopped. Instead, the supreme court said that the test for probable cause in Mississippi is “the totality of the circumstances.” Id. (citing Haddox v. State, 636 So.2d 1229, 1235 (Miss.1994)). The supreme court went on to explain that probable cause has been described as:
a practical, nontechnical concept, based upon the conventional consideration of every day life on which reasonable prudent men, not legal technicians act. It arises when the facts and circumstances within an officer’s knowledge, or of which he has reasonably trustworthy information, are sufficient in themselves to justify a man of average caution in the belief that a crime has been committed and that a particular individual committed it.
Id. (quoting Conway v. State, 397 So.2d 1095, 1098 (Miss.1980)).
1127. Here Patrolman Conner based his stop upon the belief that Ellis was driving erratically. This belief was based upon a report from a truck driver who had observed Ellis’s vehicle driving in a manner which led the trucker to ask for the assistance of the patrolman. Further, once behind Ellis, Patrolman Conner observed Ellis cross -from the fog line to the center line at which point Conner turned on his blue lights to make the stop. The supreme court has recognized that “given reasonable circumstances an officer may stop and detain a person to resolve an *1126 ambiguous situation without having sufficient knowledge to justify an arrest.” Singletary v. State, 318 So.2d 873, 876 (Miss.1975). Such an investigative stop may be made as long as the patrolman has “a reasonable suspicion, grounded in specific and articulable facts, that a person they encounter was involved in or is wanted in connection with a completed felony.” McCray v. State, 486 So.2d 1247, 1249 (Miss.1986) (quoting United States v. Hensley, 469 U.S. 221, 229, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985)). Patrolman Conner stopped Ellis’s vehicle after receiving a call from a trucker driving behind Ellis who had asked the highway patrolman for assistance. Patrolman Conner followed behind Ellis and observed him drive his SUV across the center line. Reasoning that he needed to stop the SUV to protect the safety of other drivers, he did so. We agree with the circuit court that under the totality of the circumstances, Patrolman Conner had probable cause to stop Ellis’s vehicle. Thus, we find this issue is without merit.
III. SUFFICIENCY AND WEIGHT OF THE EVIDENCE
¶ 28. In his final issue, Ellis argues that the evidence was insufficient to support the verdict, and the verdict is against the overwhelming weight of the evidence.
¶ 29. In considering whether the evidence is legally sufficient, “the critical inquiry is whether the evidence shows ‘beyond a reasonable doubt that the accused committed the act charged, and that he did so under such circumstances that every element of the offense existed.’ ” Bush v. State, 895 So.2d 836, 843-44 (¶ 16) (Miss.2005) (quoting Carr v. State, 208 So.2d 886, 889 (Miss.1968)). The key inquiry is “whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Id. If the evidence against the defendant is such that “reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions on every element of the offense,” we will deem the evidence sufficient. Id.
¶ 30. Ellis was convicted under Mississippi Code Annotated section 63 — 11— 30(l)(a) (Rev.2004), which makes it “unlawful for any person to drive or otherwise operate a vehicle within this state who ... is under the influence of intoxicating liquors.” Section 63 — 11—30(l)(a) is commonly referred to as “common law DUI.” Gilpatrick v. State, 991 So.2d 130, 133 (¶ 18) (Miss.2008). “Common law DUI is proven when a defendant’s blood alcohol results are unavailable or the defendant’s BAC tests under the legal limit, but there is sufficient evidence that the defendant operated a vehicle under circumstances indicating his ability to operate the vehicle was impaired by the consumption of alcohol.” Id. (citing Leuer v. City of Flowood, 744 So.2d 266, 268 (¶ 7) (Miss.1999)).
¶ 31. We now turn to the evidence supporting Ellis’s conviction. First and foremost is Ellis’s admission that he was drinking and driving. Ellis testified that he had a six pack of Bud Light in his vehicle when he was stopped and that he had consumed two of those beers while driving “between Tunica and Vaiden.” He also admitted to having drunk liquor and beer earlier in the day at a duck hunt. Ellis himself testified that after he was stopped, Patrolman Conner asked him if he had been drinking; and he responded, “Yes, sir.” Ellis said that Patrolman Conner asked him how much, and Ellis responded, “Well, a few.” Patrolman Conner then administered the portable breath machine, which registered positive for alcohol. Patrolman Conner testified that he *1127 smelled a strong odor of alcoholic beverage coming from Ellis when he stopped him; he observed that Ellis’s eyes were glassy; and his pupils were dilated. Patrolman Conner testified that at the jail he observed that Ellis’s pupils were still dilated. Ellis refused the field sobriety test and the Intoxilyzer 8000 test. “If a person under arrest refuses to submit to a chemical test under the provisions of this chapter, evidence of refusal shall be admissible in any criminal action under this chapter.” Miss. Code Ann. § 63-11^1 (Rev.2004). This Court has found that evidence of a defendant’s refusal to submit to a Breathalyzer test is relevant and admissible under Mississippi Rule of Evidence 402. Knight v. State, 14 So.3d 76, 80 (¶ 12) (Miss.Ct.App. 2009); see Starkey v. State, 941 So.2d 899 (Miss.Ct.App.2006) (holding that the trial court’s admittance of the defendant’s refusal to submit to the Intoxilyzer was not a violation of either the defendant’s state or federal constitutional right against self-incrimination).
¶ 32. We find that the above-outlined evidence serves as a sufficient basis for the fact-finder to conclude beyond a reasonable doubt that Ellis committed the act charged, and he did so under such circumstances that every element of the offense existed. Thus, we find that this assignment of error is without merit.
¶ 33. THE JUDGMENT OF THE CIRCUIT COURT OF CARROLL COUNTY OF CONVICTION OF DRIVING UNDER THE INFLUENCE OF INTOXICATING LIQUOR, FIRST OFFENSE, AND SENTENCE OF FORTY-EIGHT HOURS IN JAIL SUSPENDED AND TO PAY AN $800 FINE AND COSTS AND ASSESSMENTS IN THE AMOUNT OF $332.50 AND TO ATTEND THE MISSISSIPPI ALCOHOL SAFETY EDUCATION PROGRAM IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P JJ., MYERS, BARNES AND ISHEE, JJ., CONCUR. CARLTONAND MAXWELL, JJ., CONCUR IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.

. The fog line is the edge of the legally drivable portion of a roadway.

. Throughout the trial and in the briefs, the parties refer to the result of the recording device as a videotape. However, the way Patrolman Conner described the use of a memory card, we believe that the device was a digital camera. Therefore, we will substitute memory card for videotape.

. The section provides: "Upon the written request of the person tested, or his attorney, full information concerning the test taken at the direction of the law enforcement officer shall be made available to him or to his attorney.” Miss.Code Ann. § 63-11-15.

.At the time of this opinion, a motion for rehearing filed pro se by Harness was pending.