# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-KA-00499-COA

| | |
|---|---|
| JEREMY A. SNYDER A/K/A JEREMY ALAN SNYDER | APPELLANT |
| v. | |
| STATE OF MISSISSIPPI | APPELLEE |

DATE OF JUDGMENT: 03/28/2014

TRIAL JUDGE: HON. ROBERT WALTER BAILEY

COURT FROM WHICH APPEALED: LAUDERDALE COUNTY CIRCUIT COURT

ATTORNEYS FOR APPELLANT: OFFICE OF STATE PUBLIC DEFENDER
BY: GEORGE T. HOLMES
PHILLIP BROADHEAD

ATTORNEYS FOR APPELLEE: OFFICE OF THE ATTORNEY GENERAL
BY: LAURA HOGAN TEDDER
JOHN R. HENRY JR.

DISTRICT ATTORNEY: BILBO MITCHELL

NATURE OF THE CASE: CRIMINAL - FELONY

TRIAL COURT DISPOSITION: CONVICTED OF FELONY DUI AND SENTENCED TO FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH TWO YEARS TO SERVE, THREE YEARS SUSPENDED, AND FIVE YEARS OF POST-RELEASE SUPERVISION; AND TO PAY A $2,000 FINE AND $500 TO THE MISSISSIPPI CRIME VICTIMS' COMPENSATION FUND

DISPOSITION: AFFIRMED - 09/08/2015

MOTION FOR REHEARING FILED:

MANDATE ISSUED:

**BEFORE IRVING AND GRIFFIS, P.JJ., AND MAXWELL, J.**

**MAXWELL, J., FOR THE COURT:**

¶1. Jeremy A. Snyder appeals his felony DUI conviction. Driving under the influence

becomes a felony when the driver has twice previously been convicted of DUI within the last five years. Before trial, Snyder stipulated he had two prior DUI convictions. And the trial judge properly instructed the jury the stipulation only proved his two prior convictions—it could not be considered proof he committed a third DUI.

¶2.     Snyder argues the trial judge should have gone further. He insists it was wrong to allow the State to make *any reference* to his two prior DUI arrests, which the State did during its case-in-chief and closing argument. But Snyder's two prior DUIs were required *elements of the crime*. So the trial judge committed no reversible error by allowing the State to reference them. We find this particularly true since the State's reason for mentioning the two prior DUIs was not to prove Snyder also committed a third DUI. Instead, the State brought up Snyder's two past experiences with DUI tests to show his *motive and intent* for refusing these tests the third time around.

¶3.     Snyder also argues he was entitled to a spoliation-of-the-evidence instruction. But this instruction is only warranted when potentially exculpatory evidence was destroyed in bad faith. And Snyder did not show the dash-cam video of his traffic stop was erased in bad faith. Thus, we find the trial judge did not err by refusing the instruction.

¶4.     For these reasons, we affirm Snyder's conviction.

**Background Facts and Procedural History**

¶5.     In the early morning of October 6, 2012, Snyder was pulled over for speeding. When Meridian Police Officer William Gordon approached Snyder for questioning, he smelled alcohol in Snyder's truck. Snyder's speech was sluggish, and he was slow to respond to

2

questions. Assisting with the stop, Officer David Creel noticed Snyder's girlfriend was drunk. Creel also smelled alcohol and marijuana in the truck. Snyder told the officers he had been drinking earlier that evening. DUI Enforcement Officer Mike Hemrick was called to the scene. While questioning Snyder outside the vehicle, Hemrick saw Snyder visibly swaying while trying to stand.

¶6. Snyder refused all field sobriety and breathalyzer tests. He was arrested and taken to the Meridian police station. There he refused to blow into the Intoxilyzer 8000. Snyder admitted to Hemrick he had been arrested for DUI before. He claimed his attorney advised him to refuse all breathalyzer tests. At the police station, Hemrick observed Snyder's difficulty in holding his head up and keeping his balance. Because this was Snyder's third DUI, he was charged with felony DUI. *See* Miss. Code Ann. § 63-11-30(2)(c) (Supp. 2014) (classifying the third conviction for driving under the influence within a five-year period as a felony).

¶7. Before trial, Synder filed motions in limine aimed to keep the State from mentioning his two prior DUI convictions or the marijuana smell. The judge denied the motions, emphasizing the relevance of the prior convictions to the State's case and that officers may generally testify about what they observe during an arrest.

¶8. Snyder stipulated to his DUI convictions, hoping to lessen their impact on the jury. The stipulation was made in a jury instruction to be read to the jury at the end of trial. But during trial, the State brought up Snyder's earlier DUIs, once during its case and again during closing arguments. When Officer Hemrick was testifying, he was asked why someone who

3

had blown into an Intoxillizer twice and was legally intoxicated both times would now refuse to blow a third time—was it because he knew he was over the limit again? And during closing, the State argued this was not Snyder's "first rodeo." Officer Creel also testified about smelling marijuana in the truck.

¶9. The stop had been recorded by Officer Gordon's dash-cam. But the memory card was almost full and another stop was later recorded over Snyder's. So there was no preserved video of the stop and arrest. Snyder insisted the footage was exculpatory and would have shown his conduct differed from the officers' descriptions. He proposed a spoliation-of-the-evidence instruction, which the trial judge refused.

¶10. The jury was given a limiting instruction that it could only use evidence of the prior DUIs to establish the two-priors element of the crime. But it could not consider these prior convictions "as evidence that [Snyder] committed the DUI with which he is currently charged." The jury found him guilty of felony DUI. After an unsuccessful motion for a judgment notwithstanding the verdict, Snyder timely appealed.[1]

**Discussion**

**I.     Evidence of the Two Prior DUIs**

¶11. Snyder first argues the trial judge erred in not granting his motion in limine. He insists it was reversible error to not stop the State from mentioning Snyder's two prior DUIs during Officer Hemrick's testimony.

---

[1] On appeal, Snyder is represented by the State Public Defender, Indigent Appeals Division, which partnered with the criminal-appeals clinic at the University of Mississippi School of Law.

¶12. Snyder claims the State's questions violated the procedural safeguards established in *Rigby v. State*, 826 So. 2d 694 (Miss. 2002). In *Rigby*, the defendant was also facing a third-offense felony DUI charge. While he was willing to concede his two prior DUI convictions, he did not want the jury to know about them. He feared the jury would assume he had acted in conformity with his prior drunk-driving history. *Id.* at 699 (¶6). So he moved for a bifurcated trial. He proposed, in the first part, the jury would consider if he was guilty of the present DUI charge. And only after finding him guilty would the jury consider if he had two prior DUIs within five years, making him guilty of a felony. *Id*.

¶13. The trial court denied bifurcation. And the Mississippi Supreme Court agreed. The supreme court held the two prior DUIs *were elements of the crime* that must be proven beyond a reasonable doubt before the jury. *Id.* at 700 (¶9). Despite the seeming benefits of bifurcation, "such a procedure would produce several problems"—namely, "the denial of a defendant's Sixth Amendment right to trial by jury." *Id.* at 701 (¶11). Still, the supreme court found "certain procedural safeguards are warranted if a defendant offers to stipulate to previous DUI convictions." *Id.* at 702 (¶14). If a defendant offers a stipulation, "[t]he trial court should accept such stipulations, and they should be submitted to the jury with a proper limiting instruction." *Id.*

¶14. Here, *Rigby*'s procedural safeguards were followed. The trial court accepted Snyder's stipulation to two prior DUIs within five years. *And* the judge gave a proper limiting instruction. The jury was instructed to only consider Snyder's prior DUIs as evidence the State met the two-priors element of the crime, not as evidence Snyder committed the most

5

recent DUI.

¶15. It is true the State did reference Snyder's two prior DUIs during its questioning of Officer Hemrick. But its purpose was not to prove Snyder had a propensity to drive while intoxicated—a violation of Rule 404(b). *See* M.R.E. 404(b) ("Evidence of other crimes . . . is not admissible to prove the character of a person in order to show that he acted in conformity therewith."). Rather, the State mentioned Snyder's prior experience with field sobriety and breathalyzer tests to prove Snyder *knew he was intoxicated and would fail these tests*, which is why he refused them. *See id.* ("Evidence of other crimes . . . may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."). Because the evidence was admitted to show knowledge and intent—something Rule 404(b) clearly permits—there was no *Rigby* violation.

¶16. Snyder, however, argues *Rigby* prohibits mentioning his prior convictions for any purpose other than to prove the two-priors element of felony DUI. As he sees it, even the expressly permitted exceptions to Rule 404(b) are off limits. So in Snyder's view, *Rigby* eliminates Rule 404(b)'s exception that bad-acts evidence *can* be used "for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *See* M.R.E. 404(b).

¶17. We disagree and find he is stretching *Rigby* too far. The procedural safeguards established in *Rigby*—which were followed here—were designed to promote Rule 404(b)'s prohibition against prior crimes being used to prove the present crime. Nowhere in *Rigby*

did the supreme court hold that Rule 404(b)'s exceptions can never apply in felony DUI cases.

¶18. We find evidence that Snyder refused to submit to a chemical test is relevant and admissible. By statute, "If a person under arrest refuses to submit to a chemical test under the provisions of this chapter, evidence of refusal shall be admissible in any criminal action under this chapter." Miss. Code Ann. § 63-11-41 (Rev. 2013). In *Knight v. State*, 14 So. 3d 76, 80 (¶12) (Miss. Ct. App. 2009), this court found evidence that a DUI defendant refused to blow was properly admitted for two reasons. First, because the statute allows it. And second, because the defendant had told the officer his *reason* for not blowing was *he believed* he would fail the test. In other words, the jury may consider *why* someone would refuse a breathalyzer test.

¶19. Here, Officer Hemrick testified Snyder had told him he (Snyder) was not taking any tests, on advice of his DUI attorney. Officer Hemrick was then asked why someone who had blown twice before and failed would refuse a third time—other than he knew he would fail again. Because the State's questions were crafted to get to the *reason why* Snyder refused to take the field sobriety and breathalyzer test, which is relevant and admissible under section 63-11-41 and Rule 404(b), we find no reversible error in allowing them.

## II. State's Closing Argument

¶20. In a related argument, Snyder takes issue with the State's closing argument. He argues the mention of his past DUI experiences was tantamount to prosecutorial misconduct.

¶21. "Attorneys are allowed a wide latitude in arguing their cases to the jury. However,

7

prosecutors are not permitted to use tactics which are inflammatory, highly prejudicial, or reasonably calculated to unduly influence the jury." *Sheppard v. State*, 777 So. 2d 659, 661 (¶7) (Miss. 2000) (citing *Hiter v. State*, 660 So. 2d 961, 966 (Miss. 1995)). The standard of review for "lawyer misconduct during opening statements or closing arguments is whether the natural and probable effect of the improper argument is to create unjust prejudice against the accused so as to result in a decision influenced by the prejudice so created." *Slaughter v. State*, 815 So. 2d 1122, 1130 (¶45) (Miss. 2002) (citing *Sheppard*, 777 So. 2d at 660 (¶7)).

¶22.    Snyder argues the State's "not his first rodeo" comment unjustly prejudiced the jury by encouraging it to find Snyder guilty based on his past DUIs. Snyder's counsel did not object to the State's comments at trial. But he cites cases finding no procedural bar where the prosecution's "argument was so 'inflammatory' that the trial judge should have objected on his own motion" and the comment was not invited by the defense. *Long v. State*, 52 So. 3d 1188, 1193 (¶16) (Miss. 2011). If a defendant can meet this threshold test, then the court should conduct the two-prong *Spicer* test. Under *Spicer*, we ask if "the remarks were improper." And if so, we ask if "the remarks prejudicially affected the accused's rights." *Long*, 52 So. 3d at 1193 (¶17) (quoting *Spicer v. State*, 921 So. 2d 292, 318 (¶55) (Miss. 2006), *abrogated on other grounds by O'Connor v. State*, 120 So. 3d 390, 400-01 (¶¶28-19) (Miss. 2013)).

¶23.    We find the phrase "not his first rodeo" falls within the wide latitude given attorneys during argument. It was certainly not "so inflammatory" as to require a sua sponte objection by the judge. Indeed, the very reason Snyder was on trial for felony DUI was that this was

8

not "his first rodeo." That Snyder had already twice been convicted of DUI within five years was an element of the crime of felony DUI—an element the State had to prove beyond a reasonable doubt. *See Rigby*, 826 So. 2d at 701 (¶12). So the State's reference fails to even meet the threshold test.

¶24. But even had Snyder passed this threshold, the remarks were not improper under *Spicer*. The fact Snyder refused to blow is evidence. *See* Miss. Code Ann. § 63-11-41. This evidence is strengthened by the fact Snyder had been through this before and understood the consequences of blowing above the legal limit.

¶25. In short, prior DUI convictions are elements of the crime, and Snyder's refusal to submit to chemical tests is relevant and admissible evidence. So he was not unjustly prejudiced by the State's referencing both facts. Thus, we find no prosecutorial misconduct.

### III. Evidence of Marijuana Smell

¶26. Snyder also argues any reference to his truck smelling like marijuana should have been excluded. According to Snyder, Officer Creel's testimony about smelling marijuana was irrelevant to his DUI trial and thus inadmissable. *See* M.R.E. 401. Alternatively, Snyder asserts that, even if relevant, this evidence was outweighed by the danger of unfair prejudice. *See* M.R.E. 403 (providing that even relevant "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury").

¶27. Officer Hemrick did not testify he believed Snyder—or his female passenger—were high. He simply testified what the passenger and truck smelled like. Because Snyder refused

9

field or chemical tests, the State's case hinged on what the three officers observed that night. And the State is permitted to tell the jury the complete story—even if that story includes other potential bad acts by the defendant. *See Ballenger v. State*, 667 So. 2d 1242, 1257 (Miss. 1995).

¶28. As to whether the relevancy of this testimony was outweighed by the danger of unfair prejudice, that was a decision left to the broad discretion of the trial judge. *See Jones v. State*, 920 So. 2d 465, 475-76 (¶¶32-33) (Miss. 2006) (discussing the trial judge's "broad discretion" in applying Rule 403). And on appeal, we cannot say the judge abused his discretion. *See Kidd v. State*, 793 So. 2d 675, 681 (¶27) (Miss. Ct. App. 2001) (citations omitted) (holding that, to reverse based on an evidentiary ruling, a defendant must show the trial judge abused his discretion *and* the admission or exclusion of evidence effectively denied the defendant a substantial right).

### IV. Erased Dash-Cam Video

¶29. Snyder's last issue concerns the dash-cam video of his traffic stop, which was not preserved for his trial.

#### A. Spoliation-of-the-Evidence Instruction

¶30. Snyder claims the judge should have instructed the jury to presume the erased video would have been favorable to his defense. But the supreme court has held that to be entitled to a spoliation instruction there must be evidence of *intentional destruction* of the evidence. *Hardy v. State*, 137 So. 3d 289, 303 (¶52) (Miss. 2014) (citing *Murray v. State*, 849 So. 2d 1281, 1286-87 (¶¶20-23) (Miss. 2003); *Johnston v. State*, 618 So. 2d 90, 92 (Miss. 1993)).

10

Without evidence of intentional destruction, there is no presumption the unpreserved evidence would have been favorable. *Johnston*, 618 So. 2d at 92. Snyder presented no evidence the officer intentionally destroyed the memory card from his dash-cam that night. What the evidence showed was that the officer simply recorded over the video that night because the memory card was full. He claimed he was unaware the stop would lead to a felony charge.

¶31. Facing this lack of evidence, Snyder asks this court to *infer* the video was erased in bad faith. Essentially, Snyder is asking this court to overrule, or at least ignore, the supreme court's bad-faith requirement. But we have neither the authority nor the inclination to do so. The law is clear—to be entitled to a spoliation instruction, one must present evidence of intentional destruction. *Hardy*, 137 So. 3d at 303 (¶52). Snyder presented no such evidence. So we find trial judge properly refused a spoliation instruction.

### B.     Violation-of-Due-Process Argument

¶32. Finally, Snyder suggests the fact the video was not preserved violated his right to a fair trial. *See California v. Trombetta*, 467 U.S. 479, 485-90 (1984). *Trombetta* set out a two-part test to determine when destruction of evidence violates a defendant's fundamental rights. First, the evidence must have had apparent exculpatory value before it was destroyed. Second, the evidence must be such that the defendant could not obtain comparable evidence by other reasonably available means. *Id.* at 489. Four years after *Trombetta*, the Supreme Court added a third element—the failure to preserve potentially useful evidence had to result from bad faith on part of the police. *Arizona v. Youngblood*, 488 U.S. 51, 57-58 (1988); *see*

11

*Freeman v. State*, 121 So. 3d 888, 895 (¶16) (Miss. 2013) (laying out three-part due-process-violation test from *Youngblood*).

¶33. In *Freeman*, the supreme court actually reversed a DUI conviction based on the destruction of the dash-cam video. But in that case, the facts surrounding the traffic stop were "hotly contested." The defendant asked for a copy of the video within a month of the traffic stop. And the county court had deemed the video material to the defense and ordered the State to preserve it. *Freeman*, 121 So. 3d at 895-96 (¶¶16-18). So the supreme court never actually engaged in the three-part analysis from *Trombetta* and *Youngblood*. Instead, the supreme court held the State's violation of its *court-ordered* duty to preserve the video resulted in a violation of the defendant's due-process rights.

¶34. The supreme court was careful to distinguish a court-ordered duty from the general duty to preserve evidence of exculpatory value. Our supreme court noted *Youngblood* does not impose "on the police an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution." *Freeman*, 121 So. 3d at 895-96 (¶18) (quoting *Youngblood*, 488 U.S. at 58). But *Freeman* was "clearly not a case in which preserving the destroyed video would have imposed unreasonable requirements on the police to employ guesswork as to what should be preserved, or to preserve an unreasonable quantity of evidence." *Id.* at 896 (¶18).

¶35. This case is easily distinguishable from *Freeman*. The video here had not been requested *before* it was recorded over. The facts surrounding the traffic stop were not hotly disputed. The video was never deemed material to the defense. And a judge had not ordered

12

the video to be preserved.

¶36.    This case is really much closer to *Ellis v. State*, 77 So. 3d 1119 (Miss. Ct. App. 2011). In *Ellis*, Kenneth Ray Ellis also argued his due-process rights were violated because the state trooper failed to preserve a memory card containing video of a traffic stop—a stop that eventually led to Ellis's DUI arrest. *Id.* at 1123 (¶14). This court applied the three-part test, zeroing in on the bad-faith requirement. *Id.* at 1123-24 (¶¶18-20). We found Ellis had failed to show bad faith because, by the time Ellis's attorney requested a copy, the video had already been erased in the usual process of recording over older videos on the memory card. *Id.* at 1124 (¶21). The officer testified that, unless there was something unusual about the stop, he simply records over the video. No rule or regulation mandated he keep it. Nor did he record over Ellis's stop to conceal the video. Because the officer had acted "in good faith and in accord with his normal practice," we found no due-process violation. *Id.* (quoting *Trombetta*, 467 U.S. at 488).

¶37.    Similarly here, the officer explained there was nothing unusual about Snyder's traffic stop. There was no rule or regulation to preserve the video. And he did not record over Snyder's stop to "circumvent its disclosure." *Id.* So, just like his spoliation-instruction argument, Snyder cannot meet the bad-faith requirement.

¶38.    While our ruling in *Ellis* was based on the lack of bad-faith, we also expressed our "doubt that the memory card had apparent exculpatory value prior to its erasure." *Id.* at (¶20). Here, we point out that Snyder has not shown the video was exculpatory, much less that its exculpatory value was apparent before it was erased. Snyder presented nothing to

contradict the three officers' version of events that night. The video just as well may have *confirmed* their accounts as contradicted them. Snyder's argument is basically that the video would have been "better" evidence than the officers' testimony. He asserts instead of potentially biased eyewitness testimony, the video would have given the jury a "better idea" of Snyder's behavior that night. But this is not the same thing as being exculpatory.

¶39. Another point Snyder downplays is his admission that he had been drinking. In *Ellis*, we held that "any exculpatory value of the events following the stop is significantly reduced" by a defendant's admission "he was drinking and driving" and had been consuming alcohol earlier that day "and that he refused the field sobriety test and the Intoxilyzer test." *Id.* The same is true here. The exculpatory value of the video for Snyder is perhaps dubious at best. And, like *Ellis*, any exculpatory value would have been significantly reduced by Snyder's admission he had been drinking that night at the fair before being pulled over and refusing field sobriety and Intoxilyzer tests.

¶40. We find there is no due-process violation from the video not being preserved. We thus affirm Snyder's conviction.

¶41. **THE JUDGMENT OF THE LAUDERDALE COUNTY CIRCUIT COURT OF CONVICTION OF FELONY DUI AND SENTENCE OF FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH TWO YEARS TO SERVE, THREE YEARS SUSPENDED, AND FIVE YEARS OF POST- RELEASE SUPERVISION; AND TO PAY A $2,000 FINE AND $500 TO THE MISSISSIPPI CRIME VICTIMS' COMPENSATION FUND IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LAUDERDALE COUNTY.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, FAIR, JAMES AND WILSON, JJ., CONCUR.**

14